# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD HERSHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-19-344-SPS** |
| | ) | |
| **STEVE TURNER, JERRID FREEMAN,** | ) | |
| **BEN HARDCASTLE, DEBORAH** | ) | |
| **LANDRY, CHRISTINE LANDSAW,** | ) | |
| **KIRSTI WILMON f/k/a KIRSTI COOK,** | ) | |
| **JAMES MYNATT, JIM ROBERTSON,** | ) | |
| **and AMANDA CRAIG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This case arises out of a series of encounters Plaintiff Richard Hershey had at Northeastern State University ("NSU") in Tahlequah, Oklahoma. The Plaintiff has sued the President of NSU, Dr. Steve Turner, in his official capacity as President of the University, along with Dr. Jerrid Freeman, Ben Hardcastle, Dr. Deborah Landry, and Christine Landsaw in their official capacities as members of the Cabinet of the President at NSU. Additionally, the Plaintiff has sued Kirsti Wilmon, Assistant Director for Conferences and Marketing of NSU, in her individual capacity, along with Sergeant James Mynatt, Jim Robertson, and Amanda Craig, all police officers at NSU, in their individual capacities. The Defendants now all seek dismissal of the Plaintiff's Complaint. For the reasons set forth below, the Court finds that the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 27] should be GRANTED IN

PART and DENIED IN PART.

## I. Background

The Plaintiff states in his First Amended Complaint that he is a vegetarian whose ethical beliefs compel him to share his message with others, and that he is compensated by nonprofit organizations, including Vegan Outreach, for sharing his views and distributing free literature.  The Plaintiff alleges that he had distributed free literature on the NSU campus since at least November 2013, but that since March 8, 2017, he has been prevented from doing so by police officers on the NSU campus.  Moreover, he alleges that he has been denied the ability to rent table space in the University Center Lobby on multiple occasions.

The Plaintiff attached to his First Amended Complaint a copy of the NSU policy entitled "Freedom of Speech (Expressive Activity)," as well as a copy of his citation from Officer Robertson dated October 16, 2017.  *See* Docket No. 25, Ex. 1-2.  "A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Accordingly, the Court has no trouble considering the language of the policy and the Plaintiff's reference to it as part of the present motion to dismiss when necessary.

## II. Procedural History

Plaintiff filed his original Complaint in this case on October 11, 2019, against the

above-named Defendants.[1]  *See* Docket Nos. 1-2.  All Defendants moved to dismiss the original Complaint, and the Plaintiff filed his First Amended Complaint on January 31, 2020.  *See* Docket Nos. 24-25.  The Defendants again moved to dismiss on February 14, 2020.  *See* Docket No. 27.  The Court has stricken all attendant deadlines in this case pending resolution of the Motion to Dismiss.  *See* Docket No. 23.  In his First Amended Complaint, the Plaintiff's claims, all pursuant to 42 U.S.C. § 1983, are set forth as follows: (i) **Count I**, alleging violations of the First and Fourteenth Amendments as to Defendants Turner, Freeman, Hardcastle, Landry, and Landsaw in their official capacities and requesting a declaratory judgment and injunctive relief; (ii) **Count II,** alleging violations of the First and Fourteenth Amendments against Defendant Wilmon in her individual capacity and requesting damages; and (iii) **Count III**, alleging violations of the First and Fourteenth Amendments as to Defendants Mynatt, Robertson, and Craig in their individual capacities and requesting damages.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *citing Papasan v. Allain,* 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[1] Plaintiff originally also named Jackie Adair-Smith, but he has since voluntarily dismissed all claims against her.  *See* Docket Nos. 26, 31.

plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555, 556, 557, 570.

### III. Analysis

The Defendants have moved to dismiss Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Defendants first collectively assert that claims predicated on injuries occurring prior to October 11, 2017 fall outside the two-year statute of limitations and are time barred.  As to Count I, Defendants Turner, Freeman, Hardcastle, Landry, and Landsaw contend that the Plaintiff has failed to state a viable claim by only collectively grouping his allegations against them without specific facts to delineate allegations as to each individual.  Additionally, Defendants contend that the Plaintiff's assertion that the "Freedom of Speech (Expressive Activity)" policy is facially unconstitutional is a legal conclusion based only on formulaic recitations of a First Amendment claim and therefore is insufficient.  As to Count II, Defendant Wilmon asserts that Plaintiff has alleged insufficient facts to state a viable claim against her.  As to Count III, Defendants Mynatt, Robertson, and Craig argue that the facts alleged do not support a claim against them and further contend that they are entitled to qualified immunity.

### Count I:  Official Capacity Claim

The Court first notes that "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will v. Michigan Dept. of*

*State Police*, 491 U.S. 58, 71 n.10 (1989), *quoting Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985).  Here, Defendants Turner, Freeman, Hardcastle, Landry, and Landsaw assert, however, that the Plaintiff's First Amended Complaint is not sufficiently specific as to each of them because Count I refers to "the President's Cabinet" rather than each of them individually, and therefore fails to state a claim by only referring to them in a collective grouping.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249-1250 (10th Cir. 2008) ("In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.") (emphasis in original), *citing Twombly*, 550 U.S. at 564-565 & n.10.

But here, the Plaintiff alleged in the First Amended Complaint that these named Defendants comprised the "President's Cabinet" and that they make up the same official policy-making body, approved the relevant "Freedom of Speech (Expressive Activity" policy, and all engaged in the same conduct as acting policy makers at the time relevant in this case.  The Court agrees with the Plaintiff that the First Amended Complaint is sufficient in this case.  Count I of the First Amended Complaint is easily understood as alleging that all of the named Defendants alleged to be part of the "President's Cabinet" were policy makers who approved the policy at issue in this case and were behind his allegations in Count I.  *See, e. g.*, *Birdsong v. Unified Government of Kansas City, Kan.*, 2014 WL 2216904, at *4 (D. Kan. May 29, 2014) ("Plaintiff's use of the collective 'defendants' in

paragraphs 281-284 can reasonably be understood to mean that Birdsong is alleging that *all* four Defendants engaged in the alleged activities.") (emphasis in original).  *Cf. Bark v. Chacon*, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011) ("[T]he allegations pertaining to the individual Defendants all relate to a single incident, and all of the individual Defendants are alleged to have been present at that incident and to have acted in concert. Unlike *Robbins*, this is not a case where the allegations against the individual Defendants are entirely different in character and therefore mistakenly grouped in a single allegation.") (internal quotation omitted).  "The key inquiry in evaluating the viability of a complaint under Rule 8(a)(2) is whether each defendant knows why he or she was named in the complaint."  *Ferguson v. Board of County Commissioners of Sierra County*, 2013 WL 12334214, at *5 (D. N.M. April 2, 2013).  That standard has been met here.

Plaintiff's First Amended Complaint appears to make two challenges to the NSU policy in Count I:  (i) a facial challenge to the policy with regard to the requirement of advance reservation for activities near sidewalks and road intersections, as well as (ii) an as-applied challenge to specific instances of enforcement of the policy against him.  Here, the official-capacity Defendants have not moved to dismiss the Plaintiff's as-applied challenge in Count I, but they do assert that the Plaintiff has failed to state a claim because his allegation that the policy is facially unconstitutional is based on formulaic recitations of the elements of a claim and therefore is insufficient.  Defendants have provided nothing in support of this assertion and Plaintiff did not address this argument at all.  This does not, however, result in automatic dismissal of Plaintiff's claim.  *See Issa v. CompUSA*, 354 F.3d 1174, 1178 (10th Cir. 2003) ("[E]ven if a plaintiff does not file a response to a motion to

dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the Plaintiff has stated a claim upon which relief can be granted.").

A facial challenge "involves an examination of whether the terms of the [policy] itself measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain[] a constitutional infirmity that invalidates the [policy] in its entirety." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (quotation omitted). "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully[.]" *United States v. Salerno*, 481 U.S. 739, 745 (1987). Here, the Plaintiff alleges in the Complaint that the "Freedom of Speech (Expressive Activity)" policy is facially unconstitutional because it "requires advance reservation for activities near sidewalk and road intersections which could lead to arbitrary enforcement, or content or viewpoint discrimination, which constitutes an unconstitutional prior restraint on expressive activity."[2] Docket No. 25, p. 12, ¶ 85.

The language of the policy, attached to the First Amended Complaint, defines a traditional public forum as "the University's public streets, sidewalks, parks, and similar common areas" and states that they are available "for expressive activity, planned or spontaneous, for the individual or small groups [] at any time without the need for reservation, or prior approval." *See* Docket No. 25, Ex. 1, p. 1. However, the policy states

---

[2] The Court notes that the Plaintiff's facial challenge to the constitutionality of the policy only addresses the constitutionality of the policy to areas such as sidewalks and road intersections, *i. e.*, traditional public forums, and not the policy in relation to designated public forums such as the University Center lobby.

that "[a]dvance reservation [of at least five business days] is [] required for activities *near* sidewalk and road intersections, and/or in close proximity to academic buildings, anytime classes, and/or study activities, and/or research are taking place." *Id.*, p. 3 (emphasis added).  Furthermore, the policy provides that "in no circumstances will any decision be based on the content or viewpoint of the expressive activity or upon the expressed reaction of others." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555, 556, 557, 570).  The Supreme Court has articulated a three-part test for evaluating a First Amendment claim:  (i) whether the speech is protected, (ii) the nature of the forum where the speech is to occur and the proper standards for restrictions in that forum, and (iii) whether the government justification satisfies the applicable standard.  *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985).

The Plaintiff, in his First Amended Complaint, described the speech he engaged in and asserted that such speech is protected and that the forum is a traditional public forum. He further alleged that the policy is facially unconstitutional because it requires advance reservations in a traditional public forum, which is an unconstitutional prior restraint on expressive activity.  The Defendants (in a one-sentence argument) assert without reference to the First Amended Complaint that this allegation is based on a formulaic recitation of

the element of a First Amendment claim.  But here, the Court finds that a plausible reading of the Plaintiff's First Amended Complaint sufficiently provides the Defendants "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), quoting *Twombly*, 550 U.S. at 555. The Plaintiff alleged that he was challenging a policy that limited protected speech in a traditional public forum, and that the language of the policy itself has no limitations on this requirement, nor does it leave open any (much less ample) channels of communication.  *See Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1983) (A government may restrict free speech in a content-neutral manner only upon a showing that the regulation is narrowly tailored to serve a significant government interest, leaving open ample alternative channels of communication.).  As the Plaintiff has therefore "nudged [his] claims across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680, the Defendant's Motion to Dismiss is hereby denied as to Count I.

## Counts II & III:  Individual Capacity Claims

As an initial matter, the Court notes that the Plaintiff's allegations as to Defendants Wilmon, Mynatt, and Craig encompass time periods both within and outside the statute of limitations in this case.  "The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits."  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008), *citing Wilson v. Garcia*, 471 U.S. 261, 269 (1985).  The limitations period for personal injury actions under Oklahoma law is two years, *see* Okla. Stat. tit. 12, § 95(A)(3), making Plaintiff's § 1983 claims subject to the same two-year statute of limitations.  "Federal law, however, determines the date on which the claim

accrues and the limitations period starts to run."  *Mondragon*, 519 F.3d at 1082, *citing*

*Wallace v. Kato*, 549 U.S. 384, 388 (2007).  "Claims under 42 U.S.C. § 1983 assert a

violation of a federal right.  Such claims accrue when a plaintiff knows or should know his

rights have been violated.  A plaintiff 'need not have conclusive evidence of the cause of

an injury in order to trigger the statute of limitations.'"  *Perry v. Geo Group, Inc.*, 2009

WL 3698473, at *7 (W.D. Okla. Nov. 4, 2009), *quoting Alexander v. Oklahoma*, 382 F.3d

1206, 1216 (10th Cir. 2004).  A civil rights action accrues "when facts that would support

a cause of action are or should be apparent."  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th

Cir. 1995) (quotation omitted).

In this case, claims under Section 1983 accruing *before* October 11, 2017 would

generally be barred by the applicable two-year limitations period because Plaintiff filed his

original Complaint on October 11, 2019.  *See* Docket Nos. 1-2.  Defendants Wilmon,

Mynatt, and Craig therefore contend that any allegations related to a March 2017 encounter

are time barred and the Court lacks subject matter jurisdiction over them pursuant to Rule

12(b)(1).[3]  The Plaintiff concedes that the March 2017 encounter falls outside the relevant

statute of limitations but asserts that the March 2017 encounter is nevertheless actionable

because the "continuing violation doctrine" applies here and that other encounters *do* fall

within the statutory time frame.  Although the Tenth Circuit has not definitively ruled on

---

[3] Motions to dismiss for lack of subject matter jurisdiction generally take two forms:  facial or
factual.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("Rule 12(b)(1) motions
generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations
as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter
jurisdiction is based.).  Here, Defendants have raised a facial attack to the allegations in the
Plaintiff's First Amended Complaint.

whether the continuing violation doctrine applies to § 1983 claims, the Court acts as the Tenth Circuit has and assumes without deciding that it does apply and therefore takes into account the Plaintiff's allegations as to March 2017. *See, e. g.*, *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018) ("The continuing violation doctrine was developed in the Title VII employment law context, and this court has not yet decided whether it should apply to § 1983 claims."); *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017) ("For the sake of argument, we can assume that the continuing violation doctrine applies in § 1983 cases. This doctrine is triggered by continuing unlawful acts but not by continued damages from the initial violation."); *Perry v. Geo Group, Inc.*, 2009 WL 3698473, at *8 ("To apply the continuing violation doctrine, there must be at least one wrongful act within the statutory filing period").

The Defendants next contend that the Plaintiff has failed to state a claim against them, and that they are each entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Once a defendant has asserted a qualified immunity defense, "the plaintiff must meet a strict two-part test" to establish "'(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct[.]'"

*McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010), *quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). *See also Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (same). "When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v Woodward County Bd. Of County Commissioners*, 2014 WL 7399367, at *8 (W.D. Okla. Dec. 29, 2014), *citing Brown*, 662 F.3d at 1162-1164 and *Iqbal*, 556 U.S. at 666, 673-675, 677-684. In light of the Supreme Court's *Pearson* decision, this Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Here, the Court first addresses whether the individual Defendants violated a Constitutional or statutory right. "For present purposes we may and do assume that freedom of speech and of the press—which are protected by the First Amendment from abridgment by Congress—are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." *Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925). Under the facts of this case, the Plaintiff is alleging that his right to freedom of speech has been infringed upon by the Defendants, and it is this Amendment that directs how the Court analyzes these claims. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive

due process,' must be the guide for analyzing these claims.'"), *quoting Graham,* 490 U.S. at 395.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech[.]"  U.S. CONST. Amend. I.  However, this has never been an absolute right, as "[e]ven protected speech is not equally permissible in all places and at all times." *Snyder v. Phelps,* 562 U.S. 443, 456 (2011) (quotation omitted). "Courts employ a three-step process to analyze free speech claims: (1) determine whether the plaintiff's conduct is protected speech; (2) 'identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic'; and (3) determine 'whether the justifications for exclusion from the relevant forum satisfy the requisite standard.'"  *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013 (D. Kan. 2019), *quoting Cornelius*, 473 U.S. at 797.  In this case, the Plaintiff asserts, and the Defendants do not challenge, that leafletting is a form of speech protected by the First Amendment.  *Hill v. Colorado*, 530 U.S. 703, 715 (2000) ("[L]eafletting, sign displays, and oral communications are protected by the First Amendment.").

As to the second step, in *Doe v. City of Albuquerque*, the Tenth Circuit explained that there are four categories of forums that exist on government property:  (i) traditional public fora, (ii) designated public fora, (iii) limited public fora, and (iv) nonpublic fora. 667 F.3d at 1128, *citing Perry Education Association*, 460 U.S. at 45-46, and *Summum v. Callaghan*, 130 F.3d 906, 914-916 (10th Cir. 1997).  The first two are relevant to the analysis in this case as the Plaintiff notes that under the University's own policy, streets, sidewalks, and parks on the NSU campus are traditional public fora, while the tables in

University Center are a designated public fora.  The Defendants do not challenge these designations.

Because the first two steps are unchallenged, the critical analysis comes at the third step.  As to the third step, the same standard generally applies to both fora, namely, that the government must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that purpose.  *See Perry Education Association*, 460 U.S. at 45-46 ("For the state to enforce a content-based exclusion [in a traditional public forum] it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. . . . A second category consists of public property which the state has opened for use by the public as a place for expressive activity. The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.  Although a state is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.") (internal citations omitted). However, because this has been raised in the context of qualified immunity at the dismissal stage, the burden is on the Plaintiff to establish the sufficiency of the allegations in his First Amended Complaint (which the Court accepts as true at this stage).

"Section 1983 does not authorize liability under a theory of respondeat superior." *Brown*, 662 F.3d at 1164, *citing Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. This takes the form of either personal liability through personal involvement, *or* supervisory liability based on a violation of a policy. *Brown*, 662 F.3d at 1164-1165 ("Personal liability under § 1983 must be based on . . . personal involvement, and supervisory liability must be based on his Policy."). The Tenth Circuit has interpreted this to mean that "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" causing the constitutional harm. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

For purposes of supervisory liability, it becomes the Plaintiff's burden to demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199-1200 ("Denying qualified immunity on the basis of such a showing complies with *Iqbal*'s requirement that § 1983 liability only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation.") (citation omitted). "To establish personal involvement for supervisory liability the

-15-

"plaintiff must plead that *each* Government-official defendant, through the official's own individual actions, has violated the Constitution." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 768 (10th Cir. 2013) (emphasis added), *quoting Iqbal*, 556 U.S. at 676. "Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1250 (emphasis in original). As such, the task remaining before the Court is therefore whether *each defendant in their individual capacity* has violated the Plaintiff's constitutional or statutory rights.

As to causation, the Plaintiff is required "to show that the defendant's alleged action(s) caused the constitutional violation" by "set[ting] in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768 (alteration in original), *quoting Dodds*, 614 F.3d at 1185, 1200. As to the third element, the Tenth Circuit has indicated that for First Amendment claims the speech must be a "substantial or motivating factor." *Wulf v. City of Wichita*, 883 F.2d 842, 856-857 (10th Cir. 1989). *See also Petitt v. Campbell*, 2018 WL 5084317, at *11 (D. Kan. Oct. 18, 2018) ("Upon a finding that the speech in question is constitutionally protected, the Plaintiff must prove that the speech was a substantial or motivating factor in the challenged action.").

"In sum . . . plaintiffs here must establish that **each defendant** – whether by direct participation or by virtue of a policy of which he [or she] possesses supervisory responsibility – caused a violation of plaintiffs' clearly established constitutional rights,

and that each defendant acted with the constitutionally requisite state of mind." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (emphasis added). *See also Brown*, 662 F.3d at 1164-1165 ("Personal liability under § 1983 must be based on Secretary Williams's personal involvement, and supervisory liability must be based on his Policy."). The Plaintiff's allegations as to each of the four individual defendants in their individual capacity are addressed in turn below. Although it is unclear from the First Amended Complaint that the Plaintiff has stated a claim against any of the Defendants based on supervisory liability (as opposed to personal liability), the Court addresses both personal liability and supervisory liability for each Defendant out of an abundance of caution.

### Count II.

**Kirsti Wilmon**. The Plaintiff alleges that Ms. Wilmon, acting under color of law in her position as Assistant Director for Conferences and Market at NSU, received on March 6, 2017 and denied that same day a request to rent table space in the University Center lobby on March 8, 2017. The Plaintiff's request also included notice that he intended to distribute literature outdoors on campus. On March 8, 2017, the Plaintiff went to campus, began distributing his literature outside on a sidewalk, and was approached by Defendant police officers Mynatt and Craig, who ultimately took him to Defendant Wilmon's office where she denied that he had notified her of his intent to distribute literature and informed the officers that she had previously had to call the police on the Defendant. The Plaintiff alleges in the First Amended Complaint that this was untrue. While being taken to Defendant Wilmon's office on March 8, 2017, the Plaintiff observed vacant tables in the lobby. *See* Docket No. 25, pp. 6-9, ¶¶ 27-32, 40-51. On November

19, 2018, the Plaintiff again wrote to Defendant Wilmon requesting to rent table space in the University Center lobby on November 26, 2018 and November 28, 2018, and Defendant Wilmon again denied his request.  The Plaintiff went to the campus on November 26, 2018 and observed a vacant table in the lobby the entire time, as well as additional space to set up tables.  Docket No. 25, pp. 10-11, ¶¶ 76-78.

As to personal liability with regard to Defendant Wilmon, the Plaintiff's allegations, in sum, are that Defendant Wilmon:  (i) denied his request for table space twice when there were in fact tables available, and (ii) lied that she had previously called the police on him.  None of these allegations indicate that Defendant Wilmon violated the Plaintiff's First Amendment rights.  The Plaintiff contends in his response that Defendant Wilmon's denial of his request to reserve tables was not content neutral because he had been permitted to reserve tables in the past, which he contends is sufficient to assert a content-based claim as to Defendant Wilmon.  However, the Plaintiff's First Amended Complaint makes no such allegation, nor does he allege sufficient additional facts to provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93, quoting *Twombly*, 550 U.S. at 555.  *See also Perry Education Association*, 460 U.S. at 45-46 ("For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."); *Doe*, 667 F.3d at 1131.  Rather, the First Amended Complaint states that he was twice denied the ability to rent a table, then asserts that this violation of his First Amendment rights and pattern of excluding him from the tables caused him damages.  Indeed, even in his response to the Motion to Dismiss, Plaintiff simply recites the factual allegations as to

Defendant Wilmon, then states that he "would posit that her denial[s]" were not content neutral.  *See Dodds*, 614 F.3d at 1191 ("Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying [the] strict two-part test."), *quoting McBeth*, 598 F.3d at 716, *quoting Bowling*, 584 F.3d at 964.  This is insufficient.

As to supervisory liability, the Plaintiff has failed to allege that Defendant Wilmon was responsible for the policy that caused his alleged constitutional harm, and further failed to plead that she acted with any particular state of mind, much less the state of mind sufficient to establish a constitutional deprivation.  *See Pahls*, 718 F.3d at 1228.  *See also Brown v. Glanz*, 2013 WL 6909959, at *8 (N.D. Okla. Dec. 31, 2013) (slip op.) ("He has not identified what those practices and policies are, what defendant did that constituted or authorized discrimination, harassment or hostility, or how any such actions impacted her.").

**Accordingly, the Plaintiff has failed to allege a claim that would overcome Defendant Wilmon's defense of qualified immunity, so the Plaintiff's claims against Defendant Wilmon must therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

### Count III.

In Count III, the Plaintiff alleges a claim against Defendants Mynatt, Robertson, and Craig pursuant to § 1983, alleging violations of his First and Fourteenth Amendment rights. The Plaintiff's factual allegations as to each of the remaining three defendants are addressed in turn below.

**James Mynatt**.  In his First Amended Complaint, the Plaintiff alleges that when he was on the NSU campus on March 8, 2017, an NSU official contacted University police and Defendant Mynatt responded along with Defendant Craig.  Defendant Mynatt reviewed a copy of the Plaintiff's literature, then informed Plaintiff that he was prohibited from distributing it and that he was on private property. Defendant Mynatt seized the Plaintiff's driver's license, informed him that there was no soliciting on campus, and told the Plaintiff he needed to obtain permission to distribute literature and could not simply notify the University that he would be doing so.  *See* Docket No. 25, pp. 7-8, ¶¶ 39-47. Defendant Mynatt accompanied the Plaintiff to Defendant Wilmon's office that day, where Plaintiff asked Defendant Wilmon to confirm he had notified her in advance that he would be distributing literature.  Defendant Wilmon denied the Plaintiff had notified her and stated that she had previously called the police because of the Plaintiff.  In response, Defendant Mynatt told the Plaintiff he was prohibited from being on campus and would be arrested if he remained.  *See id.*, p. 8, ¶¶ 50-52.  Plaintiff left campus and proceeded to a Tahlequah city sidewalk that was in front of the University Center where "Defendant Mynatt continued to interfere with Hershey's First Amendment protected activities" and told the Plaintiff to "Shut up!"  This forced the Plaintiff to leave Tahlequah. *See id.*, pp. 8-9, ¶¶ 53-56.

The Plaintiff returned to the NSU campus on October 16, 2017, and Defendant Mynatt, accompanied by Defendant Craig, approached the Plaintiff and Defendant Robertson (who were already speaking with each other) and asked the Plaintiff to leave the sidewalk.  Defendant Mynatt again seized Plaintiff's driver's license while Defendant

Robertson issued a "Notice to Leave Campus," which banned him from the NSU campus for a period of six months.  *See id.*, pp. 9-10, ¶¶ 57, 64-69.

**Jim Robertson**.  The Plaintiff alleges that when he was on the NSU campus on October 16, 2017, Defendant Robertson, a campus police officer, approached him and requested his permit for distributing literature.   The Plaintiff informed Defendant Robertson that a permit was not necessary, and Defendant Robertson reviewed the Plaintiff's driver's license and his literature then informed Plaintiff that he could not distribute his literature without a permit.  *See* Docket No. 25, p. 9, ¶¶ 57-61.  Defendant Robertson, joined by Defendants Mynatt and Craig, then issued the Plaintiff a "Notice to Leave Campus," banning the Plaintiff from campus for six months.  Defendant Robertson also read the Notice aloud to the Plaintiff.  *See id.*, p. 10, ¶¶ 64-70.

**Amanda Craig**.  As to Defendant Craig, the Plaintiff alleges that when he was on the NSU campus on March 8, 2017, an NSU official contacted University police about his activity and Defendant Craig responded along with Defendant Mynatt to the call. Defendant Craig, along with Defendant Mynatt, informed the Plaintiff that he could not distribute his literature on campus and seized his driver's license.  *See id.*, pp. 6-7, ¶¶ 31-44.  The Plaintiff returned to the NSU campus on October 16, 2017 to distribute literature, and Defendant Craig and Defendant Mynatt approached the Plaintiff and Defendant Robertson, ultimately asking the Plaintiff to leave the sidewalk.  *See id.*, p. 9, ¶¶ 57, 64. After Defendant Robertson issued the "Notice to Leave Campus," Defendant Craig told the Plaintiff that the sidewalks were private property.  *See id.*, p. 10, ¶ 71.

**Analysis**.  In his First Amendment Complaint, the Plaintiff cites to these facts, then asserts in Count III that Defendants Mynatt, Craig, and Robertson violated his First Amendment rights and excluded him from the traditional public forum of the sidewalks and outdoor courtyards of the NSU campus and thereby suffered damages.  *See id.*, pp. 16-17, ¶¶ 111-112.  Essentially, the Plaintiff contends that they interfered with his First Amendment right to distribute leaflets in a traditional public forum, *i. e.*, the sidewalks of a public university.  Defendants do not challenge the Plaintiff's assertion of leafletting as an expression of his First Amendment rights, nor of his characterization of the sidewalks as a traditional public forum.  Defendants Mynatt, Craig, and Robertson instead contend that the Plaintiff has failed to state a claim against them because he does not assert in the First Amended Complaint:  (i) that their actions were not narrowly tailored to serve a legitimate government interest, (ii) that there were no alternative channels to engage in his speech, and (iii) that his speech was limited based upon its content.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555, 556, 557, 570.  And "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  Therefore, "[u]nder *Khalik,* a court should look to the elements of a cause of action to

determine whether a plaintiff set forth sufficient factual allegations to state a claim.*"* *Gillespie v. Patterson Dental Supply, Inc.*, 2012 WL 4758114, at *4 (N.D. Okla. Oct. 5, 2012).

The Plaintiff contends in his response brief that he properly alleged a claim that these three Defendants interfered with his Constitutional rights based on the content of his literature, correctly noting that he *did* allege that Defendant Mynatt (accompanied by Defendant Craig) and Defendant Robertson reviewed his literature before interfering with his distribution efforts.  This creates a plausible inference that Plaintiff's speech was a "substantial or motivating factor." *Wulf*, 883 F.2d at 856-857.   He further contends that, even if their actions were not based on the content of his literature, the Defendants (and not Plaintiff) would be required to show that their actions were related to the time, place, and manner, as well as narrowly tailored to serve a significant government interest leaving ample alternative channels of communication.  *See Perry Education Association*, 460 U.S. at 45.  Furthermore, the Court notes that the Defendants' requirement that the Plaintiff leave campus on March 8, 2017, and the October 16, 2017 ban provide a plausible inference that there were *no* alternative channels of communication available to the Plaintiff. Therefore, the Court finds that a plausible reading of the Plaintiff's First Amended Complaint sufficiently provides the Defendants "'fair notice of what the . . . claim is and the grounds upon which it rests[,]'" *Erickson*, 551 U.S. at 93, quoting *Twombly*, 550 U.S. at 555, and he has sufficiently "nudged [his] claims across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680.  The Plaintiff's Count III sufficiently alleges a claim of personal liability as to Defendants Mynatt, Craig, and Robertson.  As to supervisory

liability, however, the Court finds that the Plaintiff has not alleged that any of these three Defendants were responsible for a policy that caused his alleged constitutional harm, and thus that it has not been raised by the Plaintiff as to these Defendants.

The Court now turns to whether the law was clearly established at the time of the encounters.  "Whether a right is 'clearly established' is an objective test."  *Brown*, 662 F.3d at 1164.  "'In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"  *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (2010), *quoting Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). However, "'clearly established law' should not be defined 'at a high level of generality.'"  *Pauly v. White*, 137 S. Ct. 548, 552 (2017), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  Instead, it "must be 'particularized' to the facts of the case.  Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Id.*, *quoting Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987).  "In determining whether a right is clearly established, the relevant inquiry is 'whether it would be clear to a [reasonable government official] that his conduct was unlawful in the situation he confronted.'"  *C.G. v. City of Fort Lupton*, 2014 WL 2597165, at *7 (D. Colo. June 10, 2014), *quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001).  In this case, it is clear that a government's restriction on content in a traditional or designated public forum must be necessary to serve a compelling state interest and be narrowly drawn to achieve that end.  *See Perry Education Association*, 460 U.S. at 45; *Summum*, 130 F.3d at 914.  *See also*

-24-

*Mason v. Wolf*, 356 F. Supp. 2d 1147, 1162 (D. Colo. 2005) ("At the time the regulation was devised, the First Amendment law was clearly established. The cases required a narrowly tailored regulation enforcing a significant government interest if a governmental entity was to restrict free speech in a designated public area. The *Summum* case decided in 1997 said as much, not to mention the 1983 *Perry* case decided by the United States Supreme Court. At the time the regulation was applied to plaintiffs in April 2002, the law was the same*."*).  This applies to distributing leaflets in a traditional public forum.  *See Hill*, 530 U.S. at 715 ("[L]eafletting, sign displays, and oral communications are protected by the First Amendment[,] and public sidewalks, streets, and ways [] are 'quintessential' public forums for free speech.'").  It is thus clearly established law a person may distribute leaflets on a public sidewalk without interference from government actors.

**Accordingly, the allegations against Defendants Mynatt, Craig, and Robertson do not establish that they would be entitled to qualified immunity on the Plainitff's claim against them, and said claim therefore cannot be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).**

In summary, the Plaintiff's Count II as to Defendant Wilmon is hereby dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Defendant Wilmon is granted qualified immunity, but Plaintiff's Count III as to Defendants Mynatt, Craig, and Robertson cannot be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and these Defendants are not entitled to qualified immunity.

**CONCLUSION**

Accordingly, the Court finds that the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Docket No. 27] IS HEREBY GRANTED IN PART and DENIED IN PART.  It is GRANTED as to Count II, and DENIED as to Counts I and III.

IT IS SO ORDERED this 21st day of April, 2020.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma